IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
AT SOUTH BEND

MARY MUJICA
    AND
FRANK MUJICA
227 RAINBOW DR. #12734
LIVINGSTON, TX 77399

CASE NO. 3:23-cv-169

    PLAINTIFFS

COMPLAINT AND JURY DEMAND

    - VS. -

NEWMAR CORPORATION
C/O CT CORPORATION SYSTEM, S/A
334 NORTH SENATE AVENUE
INDIANAPOLIS, IN 46204

    AND

FREIGHTLINER CUSTOM CHASSIS CORPORATION
C/O CT CORPORATION SYSTEM, S/A
334 NORTH SENATE AVENUE
INDIANAPOLIS, IN 46204

    DEFENDANTS

---

**PRELIMINARY STATEMENT**

1. This case is about a defective "lemon" 2020 Newmar Mountain Aire motor home that was in the repair shop for warranty repairs about 14 times, for over 400 days, for repair of over 100 different defects, and which is still not fixed. Simply put, this $724,926.09 motor home is not and never was fit for recreational use.

2. This case involves claims asserted under the Indiana, Colorado and/or Arizona Uniform Commercial Code, and the Magnuson Moss Warranty Act.

3. Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 USC 2301 et seq, invoking 28 USC 1331, and/or the amount in controversy is more than $75,000 and is between citizens of different states, invoking 28 USC 1332.

4. The vehicle which is the subject of this dispute was acquired by Plaintiffs in Colorado and was defective when acquired; ineffective repair attempts were made upon the subject vehicle by Defendant Freightliner Custom Chassis Corporation's authorized representative dealerships in Colorado and Arizona; ineffective repair attempts were made upon the subject vehicle by Defendant Newmar Corporation's authorized representative dealerships in Colorado and Arizona; the place where the relationship of the parties arose is Colorado because the warranty obligations of Defendants were received by Plaintiffs with the purchase of the subject RV in Colorado; Freightliner Custom Chassis Corporation manufactured the chassis in South Carolina and delivered the chassis to Newmar Corporation in Indiana for manufacture and distribution as a motor home in its final form by Newmar Corporation in Indiana; Newmar Corporation manufactured and distributed the motor home in its final form in Indiana; and Newmar Corporation advertised and solicited the sale of the RVs which it manufactured and distributed, including Plaintiff's motor home, in Indiana and in Colorado.

## IDENTIFICATION OF PARTIES

5. Mary Mujica and Frank Mujica are natural persons domiciled and residing in Texas and are consumers and buyers within the meaning of applicable laws.

6. Defendant Freightliner Custom Chassis Corporation ("FCCC") was, at all times relevant, a Delaware corporation doing business in Indiana and elsewhere, and is the manufacturer and warrantor of the subject RV's chassis that was used in the construction of the subject 2020 Newmar Mountain Aire that Plaintiffs acquired from Transwest Truck Trailer RV in Frederick, Colorado. Defendant FCCC has its principal place of business in, is domicile in, and is a citizen and resident of South Carolina. Defendant FCCC was, at all times relevant, engaged in the business of manufacturing and servicing motor home chassis through its authorized dealerships and agents, which it maintains in Colorado and Arizona and elsewhere.

7. Defendant Newmar Corporation ("Newmar") is an Indiana corporation authorized to do business and doing business in Indiana, Colorado and Arizona, and whose principal place of business is in Indiana and is a warrantor of a recreational vehicle that Plaintiffs acquired and a supplier and a merchant. Defendant Newmar installed the "box" living portion of the motor home on the FCCC chassis, and manufactured and warranted the complete RV. Defendant Newmar was, at all times relevant, engaged in the business of selling and servicing motor homes through its authorized dealerships and agents. Defendant Newmar has its principal place of business in, is domicile in, and is a citizen and resident of Indiana.

8. The Plaintiffs acquired the subject motor home from Transwest Truck Trailer RV, in Frederick, Colorado, and Transwest Truck Trailer RV performed any pre-sale warranty repairs on the RV. At all times relevant, Transwest Truck Trailer RV was

a supplier, merchant and an authorized representative and agent of Newmar and FCCC in Colorado for the sale and service of Newmar and FCCC products in Colorado. At all times relevant, Transwest Truck Trailer RV was authorized by Newmar and by FCCC to act for it as its authorized agent and representative in Colorado in all respects related to the sale of the motor home involved in this case and the attempted performance of warranty repair and service work upon the subject new motor home.

9. The Plaintiffs presented the subject motor home for repairs under the FCCC warranty to Velocity Vehicle Group, in Chandler, Arizona. At all times relevant, Velocity Vehicle Group was a supplier, merchant and an authorized representative and agent of FCCC for servicing of FCCC products in Arizona. At all times relevant, Velocity Vehicle Group was authorized by FCCC to act for it as its authorized agent and representative in Arizona in all respects related to the attempted performance of warranty repair and service work upon the subject new 2020 Newmar Mountain Aire.

10. The Plaintiffs presented the subject motor home for repairs under the Newmar warranty to Lazydays RV Phoenix, in Mesa, Arizona. At all times relevant, Lazydays RV Phoenix was a supplier, merchant and an authorized representative and agent of Newmar for servicing of Newmar products in Arizona. At all times relevant, Lazydays RV Phoenix was authorized by Newmar to act for it as its authorized agent and representative in Arizona in all respects related to the attempted performance of warranty repair and service work upon the subject new 2020 Newmar Mountain Aire.

11. The Plaintiffs presented the subject motor home for repairs under the Newmar warranty to Freedom RV, in Tuscon, Arizona. At all times relevant, Freedom RV was a supplier, merchant and an authorized representative and agent of Newmar for servicing of Newmar products in Arizona. At all times relevant, Freedom RV was authorized by Newmar to act for it as its authorized agent and representative in Arizona in all respects related to the attempted performance of warranty repair and service work upon the subject new 2020 Newmar Mountain Aire.

12. Plaintiffs presented the subject motor home to both Defendant FCCC and Defendant Newmar authorized dealers for repairs under their respective warranties, and were in contact with Defendant Newmar regarding the RV's defects and their dissatisfaction with the safety and quality of the Newmar RV. However, instead of repairing the motor home as they each promised to do in their warranty, Defendants failed to do so.

### FIRST CLAIM: BREACH OF WARRANTY AND/OR CONTRACT

13. This case involves a defective 2020 Newmar Mountain Aire recreational vehicle that Defendants each warranted and contracted to warrant but which they were not able to repair within a reasonable number of chances, a reasonable amount of time, or at all, and whose warranty and/or contract Defendants breached.

14. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

15. This claim is for breach of warranty and/or contract by Defendant Newmar in Indiana and Defendant FCCC in Colorado, Arizona, or Indiana.

16. As a result of the above, and the allegations below, inter alia, Defendants each breached their warranty and/or contract to the injury of Plaintiffs.

17. At all times relevant, Transwest Truck Trailer RV was a supplier and merchant and an authorized representative and agent of Defendant Newmar and Defendant FCCC. Transwest Truck Trailer RV was authorized by Defendant Newmar and Defendant FCCC to act for it in all respects related to warranty repair work performed or attempted on the subject vehicle. Plaintiffs acquired the subject RV from Transwest Truck Trailer RV and Transwest Trust Trailer RV performed warranty repairs on the subject RV.

18. At all times relevant, Lazydays RV Phoenix was a supplier and merchant and an authorized representative and agent of Defendant Newmar. Lazydays RV Phoenix was authorized by Defendant Newmar to act for it in all respects related to warranty repair work performed or attempted on the subject vehicle. Warranty repair attempts upon the subject RV were made by Lazydays RV Phoenix.

19. At all times relevant, Velocity Vehicle Group was a supplier and merchant and an authorized representative and agent of Defendant FCCC. Velocity Vehicle Group was authorized by Defendant FCCC to act for it in all respects related to warranty repair work performed or attempted on the subject vehicle. Warranty repair attempts upon the subject RV were made by Velocity Vehicle Group.

20. At all times relevant, Freedom RV was a supplier and merchant and an authorized representative and agent of Defendant Newmar. Freedom RV was authorized by Defendant Newmar to act for it in all respects related to warranty repair work performed or attempted on the subject vehicle. Warranty repair

attempts upon the subject RV were made by Freedom RV.

21. On or about July 14, 2020 the parties entered into a consumer transaction, in that Plaintiffs agreed to acquire from Transwest Truck Trailer RV, Transwest Truck Trailer RV agreed to sell to Plaintiffs, under the terms of a finance agreement with US Bank, and Defendants each contracted and/or agreed to warrant the vehicle to be free from defects and/or that it would repair and/or replace any defect which it contracted and/or warranted against, the goods being a certain 2020 Newmar Mountain Aire recreational vehicle believed to bear VIN # 4UZFCTFM0LCLX7424, and whose total cost including down payment, trade in and financing was about $724,926.09.

22. Plaintiffs acquired the vehicle in reliance on the existence of a written warranty and/or contract from each Defendant and on advertising representations and/or warranties of each Defendant.

23. Defendant Newmar's warranty states as follows: "Purchaser and dealer further agree the courts (state or federal) located in the State of Indiana have exclusive jurisdiction to resolve any dispute based upon this warranty, any implied warranty, or any alleged warranty breach, as well as any claim or cause filed in conjunction with a breach of warranty claim. Indiana Law shall apply to all agreements, disputes, negotiations, litigation, and settlements."

24. Defendant FCCC was aware of the above clause in Defendant Newmar's warranty, and continued to sell its completed chassis to Newmar, including Plaintiffs', knowing that it may be subject to litigation in Indiana.

25. The purpose of Defendants' warranties were (a) to get the RV fixed within a

reasonable amount of time and within a reasonable number of attempts if a defect arose, and (b) to give Plaintiffs confidence in the reliability and quality of the RV, and (c) to give Plaintiffs confidence in the Defendants' representations about the subject RV and chassis and the RVs and chassis Defendants designed and built, and (d) to give Plaintiffs confidence in Defendants themselves as a responsible company that lived up to its representations, its word, and its warranties.

26. After acquiring the vehicle, Plaintiffs discovered that it did not conform to the representations of each Defendant inasmuch as it developed continuing malfunctions, defects and problems.

27. The defects in the RV, which were substantial and existed in the materials and workmanship caused by Defendant Newmar and Defendant FCCC, included, but are not limited to: Kitchen Cabinet Light Does Not Turn Off ; Master Bath Cabinet Door Falling Off; Master Bath Trim Molding Loose; Shower Bench Does Not Stay Secured; Water Compartment Door Doesn't Stay Latched; Passenger Side Cockpit Window Shade Not Operating Properly; Battery Disconnect Not Turning Off; Master Bath Access Panel Not Secure; Rear Egress Vent Window Panel Fell Off; Half Bath Window Separating; Front Dayshade Will Not Go Down; Compartment Door For Batteries Not Aligned; Engine Compartment Door Needs Aligned; Program Passenger Side Cockpit Shade; Aqua Hot Not Working on Shore Power; Cabinet Under Sink Loose; Mid Bath Toilet Will Not Flush on Shore Power; AC Blowing Warm Air; Fresh Water Autofill Not Working; Bedroom Sliding Door off Track; Dining Table Won't Slide Out; Roof Leaking;

Middle Dash Drawer Opens in Transit; Rock Guard Came Off in Transit; GPS Updated; Light Panel Bedroom Inoperative; Front AC Condensation Pools on Roof; DS Rear Couch Cushion Stain; Back Dinette Cushion Ink Mark; Tag Axle Light Came On; DS Slideout Damaged Flooring; Batteries Not Charging Correctly; Right Turn Signal / Brake Lights Not Working Consistently; Awning Opens in Transit; Day Shade Above Couch Wiring Damaged; Smoke Detector Batteries; Ceiling Lights Flicker When Faucet Turned On/Off; Wiring Panel in Master Closet Open; Shade Wiring Hanging Down DS Captain Chair; Lubricate Step; Invertor Fault Mode; Touch Pads Replaced; Water Pump Causes Light to Flicker; Slide Door off Track; Fridge Door Lock Off; Entry Step Falling Apart; DS Moveable Window Air Noise; Ceiling Panels Falling Out; Entry Door Vinyl Loose / Peeling; Tile Under Full Wall Slide Changed, Residual Grout; Dinette Extension Doesn't Work, Panel Under Seat Not Aligned; Floor Heating Trips GCFI and Has Red Spot; Cabinets Over Kitchen Sink Not Aligned; Cabinets Over Sofa Not Aligned; Closet Light Always On; Shower Seat Won't Stay Up; Water Intrusion in Ceiling; Dish Washer Code F54; Panel Under Closet Not Flush; Full Wall Slide Not Flush; Rear Toilet Showed Red When Empty; Front Toilet Showed Red When Empty; Shower Silicone / Rubber Keeps Pulling Out; Shower Mister Not Hot; Egress Window Fell Out; Medicine Cabinet Not Flush; DS Battery Door Hard to Close / Flew Open in Transit; Rear Passenger Side Battery Door Not Flush; Water Bay Door Not Aligned; Wires Only Taped Together Under Toilet; Rock Guard Failed; 50 Amp Shore Cord Pulling Apart; Window Adhesive Failure; Wiring Under Seat Not Secured; Recall Int FL 917; Engine Overheats; Campaign 2532;

Recall SF644B; Recall FL917A; Comfort Steer Inoperative; Expandable Dinnette Gets Stuck; Bedroom Trim Came Off; Cannot Program Keyless Entry; TV Goes Black When Other TV In Use; Day Shade Over Couch Fell Off; Accent Panel Fell Off; Inside Cabinet Light Stays On; Transmission failure; Leaking Torque convertor, among other things.

28. Each Defendant was notified of defects and non-conformities in the vehicle and the authorized repair facility's failed repair attempts repeatedly prior to filing this case.

29. In all respects, Plaintiffs substantially if not completely performed their obligations under the RV's warranty from Defendants Newmar and FCCC and Newmar and FCCC did not perform their obligations, as set forth herein above and below.

30. Because of the contract and/or warranty-covered defects, Plaintiffs notified each Defendant and/or one of its authorized servicing dealers of the numerous defects and on various dates delivered the motor coach into the possession of each defendant and/or one of its authorized servicing dealers at Plaintiffs' cost and/or expense beginning shortly after the sale.

31. On or about July 27, 2020, Plaintiffs presented the RV to Transwest Truck Trailer RV, both a Newmar and FCCC factory authorized dealership, for about 4 days for the repair of the following defects under the Newmar and FCCC warranties:

- Awning Opens in Transit;
- Expandable Dinnette Gets Stuck;
- Bedroom Trim Came Off;
- Cannot Program Keyless Entry;
- TV Goes Black When Other TV In Use;

- Coach Lights Flicker;
- Day Shade Over Couch Fell Off;
- Accent Panel Fell Off;
- Inside Cabinet Light Stays On.

33. On or about September 3, 2020, the RV was towed to Lazydays RV Phoenix, a Newmar factory authorized dealership, and remained there for about 117 days for repair of the following defects under the Newmar warranty:

- Day Shade Above Couch Wiring Damaged;
- Kitchen Cabinet Light Does Not Turn Off ;
- Master Bath Cabinet Door Falling Off;
- Master Bath Trim Molding Loose;
- Shower Bench Does Not Stay Secured;
- Awning Opens in Transit;
- Water Compartment Door Doesn't Stay Latched;
- PS Cockpit Window Shade Not Operating Properly;
- Battery Disconnect Not Turning Off;
- Entry Door Vinyl Peeling;
- Master Bath Access Panel Not Secure;
- Rear Egress Vent Window Panel Fell Off;
- Half Bath Window Separating.

34. On or about February 18, 2021, Plaintiffs again presented the RV to Lazydays RV Phoenix, a Newmar factory authorized dealership, for about 21 days for the repair of the following defects under the Newmar warranty:

- Front Dayshade Will Not Go Down;
- Compartment Door For Batteries Not Aligned;
- Engine Compartment Door Needs Aligned;
- Program PS Cockpit Shade;
- Awning Opens in Transit .

35. On or about April 2, 2021, after Lazydays RV Phoenix sent a service representative to charge the RV's batteries, Plaintiffs again presented the RV to Lazydays RV Phoenix, a Newmar factory authorized dealership, for about 48 days for the repair of the following defects under the Newmar warranty:

- Batteries Not Charging Correctly;
- Right Turn Signal / Brake Lights Not Working Consistently.

36. On or about May 19, 2021, Plaintiffs again presented the RV to Lazydays RV Phoenix, a Newmar factory authorized dealership, for about 5 days for the repair of the following defects under the Newmar warranty:

- Aqua Hot Not Working on Shore Power;
- Cabinet Under Sink Loose;
- Mid Bath Toilet Will Not Flush on Shore Power.

37. On or about July 6, 2021, Plaintiffs again presented the RV to Lazydays RV Phoenix, a Newmar factory authorized dealership, for about 80 days for the repair of the following defects under the Newmar warranty:

- DS Slideout Damaged Flooring;
- AC Blowing Warm Air;
- Fresh Water Autofill Not Working;
- Bedroom Sliding Door off Track;
- Dining Table Won't Slide Out;
- Roof Leaking;
- Middle Dash Drawer Opens in Transit;
- Engine Overheats;
- Rock Guard Came Off in Transit;
- GPS Updated;
- Brake Lights Inop;
- Light Panel Bedroom Inop;
- Front AC Condensation Pools on Roof;
- DS Rear Couch Cushion Stain;
- Back Dinette Cushion Ink Mark;
- Tag Axle Light Came On;
- Engine Overheats;
- No Rear Lights Except Rt Turn Signal.

38. On or about September 23, 2021, Plaintiffs had the RV transported from Lazydays RV Phoenix to Velocity Vehicle Group, an FCCC factory authorized dealership, for repair of the following defects under the FCCC warranty for about 35 days:

- Recall SF595;
- Tag Axle Light Came On;
- Comfort Steer Inoperative (The Comfort Steer was never properly connected at FCCC, meaning it should have failed. Two inspections by FCCC, two inspections and a test drive by Newmar and one inspection and test drive by Transwest);
- Engine Overheats.

39. Plaintiffs picked up their RV from Velocity Vehicle Group on or about October 27, 2021. However, before they could get the RV to its destination, the RV broke down and they were required to have it towed back to Lazydays RV Phoenix for repairs.

40. On or about October 27, 2021, Plaintiffs again had the RV towed to Lazydays RV Phoenix, a Newmar factory authorized dealership, for about 84 days for the repair of the following defects under the Newmar warranty:

- Ceiling Tiles Corners Have Fallen;
- Smoke Detector Batteries;
- Ceiling Lights Flicker When Faucet Turned On/Off;
- Brake Light/Turn Signal Bulb Out;
- Wiring Panel in Master Closet Open;
- Shade Wiring Hanging Down DS Captain Chair;
- Lubricate Steps.

41. On or about February 23, 2022, Plaintiffs again presented the RV to Lazydays RV Phoenix, a Newmar factory authorized dealership, for about 14 days for the repair of the following defect under the Newmar warranty:

- Drivers side slideout damaging floor.

42. On or about May 4, 2022, Plaintiffs presented the RV to Velocity Vehicle Group, an FCCC factory authorized dealership, for repair of the following defects under the FCCC warranty for about 23 days:

- Recall FL917A;
- Recall SF644B;
- Engine Overheats;
- Campaign 2532.

43. On or about June 13, 2022, Plaintiffs presented the RV to Velocity Vehicle Group, an FCCC factory authorized dealership, for repair of the following defects under the FCCC warranty for about 2 days:

- Recall IntFL917;
- Engine Overheats.

The RV had to be towed back to Velocity Vehicle Group on June 13, 2022, June 14, 2022, and June 15, 2022. Each time the tow was needed because the engine overheated.

44. On or about July 5, 2022, Plaintiffs presented the RV to Velocity Vehicle Group, an FCCC factory authorized dealership, for repair of the following defects under the FCCC warranty for about 9 days:

- Recall 2602;
- AC Blows Warm;
- Engine Overheats;
- Transmission Malfunctions.

45. On or about July 25, 2022, Plaintiffs presented the RV to Freedom RV, a Newmar factory authorized dealership, for repair of the following defects under the Newmar warranty for about 40 days:

- Invertor Fault Mode;
- House Batteries Not Charging;
- Touch Pads Replaced;
- Water Pump Causes Light to Flicker;
- Slide Door off Track;
- Fridge Door Lock Off;

- 14 -

- Entry Steps Falling Apart;
- DS Moveable Window Air Noise;
- Ceiling Panels Falling Out;
- Entry Door Vinyl Loose;
- Tile Under Full Wall Slide Changed, Residual Grout;
- Dinette Extension Doesn't Work, Panel Under Seat Not Aligned;
- Floor Heating Trips GCFI and Has Red Spot;
- Cabinets Over Kitchen Sink Not Aligned;
- Cabinets Over Sofa Not Aligned;
- Closet Light Always On;
- Shower Seat Won't Stay Up;
- Water Intrusion in Ceiling;
- Dish Washer Code F54;
- Panel Under Closet Not Flush;
- Full Wall Slide Not Flush;
- Rear Toilet Showed Red When Empty;
- Front Toilet Showed Red When Empty;
- Shower Silicone / Rubber Keeps Pulling Out;
- Shower Mister Not Hot;
- Egress Window Fell Out;
- Medicine Cabinet Not Flush;
- DS Battery Door Hard to Close / Flew Open in Transit;
- Rear PS Battery Door Not Flush;
- Water Bay Door Not Aligned;
- Wires Only Taped Together Under Toilet;
- Rock Guard Failed;
- 50 Amp Shore Cord Pulling Apart;
- Lights Flickering;
- Window Adhesive Failure;
- Wiring Under Seat Not Secured.

46. On or about October 20, 2022, Plaintiffs presented the RV to Velocity Vehicle Group, an FCCC factory authorized dealership, for repair of the following defects under the FCCC warranty for about 27 days:

    - Leaking Torque Converter.

47. Plaintiffs had numerous telephone calls and emails with both Defendants and their authorized dealers and/or other entities asking for help with the RV and

during most if not all of these, Plaintiffs were in Texas.

48. After being in the repair shop about 14 times and being out of service for more than 400 days in the first two years and accumulating more than 100 total defects since its acquisition, Plaintiffs notified each defendant that they wanted their money back but the defendants would not do that.

49. In spite of each Defendant's obligations, when Plaintiffs complained of the inability of each Defendant and its authorized warranty-repair facilities to repair the vehicle, Defendants did not repair or replace or repurchase the subject vehicle.

50. Prior to filing this case, including on June 21, 2022, October 11, 2022, and one or more other dates, Plaintiffs provided notice to each Defendant about its failures to live up to its warranty and/or contract.

51. Instead of performing as represented, the Defendants did not repair all defects in the vehicle once and for all time. In short, the defects were not repaired, Plaintiffs lost all confidence in the reliability and quality of the RV, and Plaintiffs lost all confidence in Newmar and FCCC as a companies.

52. As a result Defendants each breached its express and/or implied warranties and/or contract.

53. As a result, each Defendant's warranty and/or contract failed of its essential purpose and any limitations contained within the warranty and/or contract are null and void and Plaintiffs are entitled to all applicable legal and equitable remedies in law.

54. In addition, any limitations contained within the warranties and/or contracts are

null and void and without consideration and Plaintiffs are entitled to all applicable legal and equitable remedies in law.

55. Through its advertising and otherwise, each Defendant represented that the recreational vehicles it built were fit for the purpose for which they were designed, that they are safe and suitable vehicles for their intended designed use, reliably operable for private transportation and Plaintiffs acquired the vehicle in reliance upon the belief that each Defendant possessed a high degree of manufacturing skill and judgment.

56. Through its advertising and otherwise, each Defendant represented that the recreational vehicles which it manufactured were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used, and Plaintiffs relied on such, but the vehicle involved in this case was not, however, of merchantable quality.

57. The malfunctions and defects in the vehicle severely and substantially impaired its use and/or safety and/or value to Plaintiffs.

58. Each Defendant's failure to timely fix all of the vehicle's defects has caused Plaintiffs to lose confidence in the reliability of the subject motor vehicle and in the ability of Defendants to repair the vehicle's defects.

59. Plaintiffs provided each Defendant and/or one or more of its authorized dealers with a reasonable number of opportunities to repair the vehicle but they have each neglected, failed, refused or otherwise been unable to do so within a reasonable amount of time or a reasonable number of attempts or at all.

60. As a result of the above facts, each Defendant breached its warranties and/or

contract and/or representations with respect to the vehicle.

61. One or more of the defects and malfunctions in the vehicle were covered under the terms of each Defendant's warranties and/or contract, and each Defendant failed to repair the vehicle, thereby diminishing the use and/or safety and/or value of the vehicle.

62. Each Defendant and/or one or more of its authorized dealers had notices of the breaches of the warranty and/or contract and the defective condition of the subject motor vehicle within a reasonable time.

63. Plaintiffs suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failure of each Defendant's authorized representatives to repair or replace the vehicle or refund its price.

## SECOND CLAIM: MAGNUSON MOSS WARRANTY ACT

64. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

65. This claim is for breach of express and/or implied warranties and/or contract of warranties and/or each Defendant's violation of its obligations under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et seq, including but not limited to its obligations to comply with its warranties and/or contract and/or to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and its applicable regulations.

66. As a result of the above, among other things, Defendant Newmar and Defendant FCCC has breached its obligations under the Warranty Act and/or its applicable

disclosure and/or other regulations.

67. As a result of the above, among other things, Defendants breached their obligations to make their respective warranty term disclosures and their actions in full compliance with all provisions of the Warranty Act and the applicable Code of Federal Regulations.

68. As a result of the above, inter alia, each Defendant is in violation of the Warranty Act.

**WHEREFORE**, judgment is demanded against Defendants as deemed proper and lawful by the Court, cumulatively and/or alternatively as follows:

## PRAYER FOR RELIEF

1. On the first claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial;

2. On the second claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

**Plus** on each and every claim, expenses of suit and litigation, interest from the date of acquiring the RV, reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

## JURY DEMAND

Plaintiffs demand trial by jury on all claims and issues.

Respectfully submitted,

/s/ Elizabeth Ahern Wells_____
ELIZABETH AHERN WELLS
Attorney for Plaintiffs
8250 Washington Village Drive
Dayton, OH 45458-1850
Telephone:   937.432.9500
Fax:              937.432.9503
Email:          Beth@BurdgeLaw.com

Y:\data\Mujica, Mary & Frank\Core Pleadings\Core Complaint 022223 bw.wpd